## Wilson's Petition

*S. Davis Wilson*, for petitioner.

HEILIGMAN, J., July 8, 1935.—On April 6, 1935, the city controller filed a petition for the purpose of obtaining the judgment of this court upon the questions therein raised in pursuance of the provisions of the Declaratory Judgment Act of June 18, 1923, P. L. 840. The petition recites in substance that by proper proceedings duly had the Council of the City of Philadelphia authorized five certain loans, appropriated the proceeds thereof to cer-

tain public works, and obtained the consent of the electors thereto. In pursuance of the authority thus conferred, bonds were sold, of which $17,500,000 in the five loans remain unissued and unsold, as the city solicitor has taken the position that because of the reduction and shrinkage in the assessed value of the taxable property in the City of Philadelphia, the remaining authorized but unissued bonds of the city cannot now be legally offered for sale. As a result, the proceeds of the bonds sold have been exhausted and general funds have been used to pay certain items properly chargeable to loan funds. Also as a result there is outstanding $13,391,926.34 in unencumbered balances of appropriations lawfully appropriated by city council, for which there are no available loan funds. For the reason given, the mayor and city solicitor refuse to enter into the necessary contracts to carry out the projects for which such appropriations were made. The petition concludes with the averment that unless the various officials hold "a common view" in these matters, litigation will result, and also that "a controversy is imminent with respect to your petitioner's duties, rights and obligations in respect thereto."

The specific matters in which the petition requests the decree and judgment of the court are the questions of whether or not the mayor should execute the contracts for the authorized public works projects for which there are unencumbered loan fund appropriations; whether or not the controller should certify such contracts; whether or not the controller should regard the authorized but unissued loans as debts of the city, and regard the executed contracts entered into when the total outstanding bonds did not exceed the debt incurring capacity as legal obligations of the city; and whether or not the bonds of the authorized but unissued loans can be offered for sale by the mayor, city solicitor, and controller to complete the authorized projects, to discharge contracts entered into when the bonds outstanding were within the debt incur-

ring capacity, and to refund the general fund for advances to the loan fund.

From other averments in the petition, it is obvious that the controller desires to have the authorized but unissued bonds sold and the proceeds used for the purposes set forth in the petition. He believes that the interests of the taxpayers require and the law permits such a course of action. The mayor and city solicitor, one of whom must join with the city controller for such sale, refuse to act. Attached to the petition, marked "Exhibit A" are copies of the various ordinances and the amendments thereto authorizing the mayor, city solicitor and city controller, or any two of them to borrow "at such times and in such proportions as, in their judgment, the best interests of the city demand", the sums or loans in question. In the cases where the consent of the electors has been obtained, as provided in article XVIII, secs. 3 and 4 of the City Charter Act of June 25, 1919, P. L. 581, such consent is to the increase in the indebtedness in the manner authorized or proposed by council in said ordinances. It is merely a consent and not a mandate of the electors.

Clearly the matter is not a controversy requiring a legal adjudication, but is a conflict of opinion among the authorized city officials as to what the best interests of the city demand. The duty of the mayor in the premises is to act in accordance with his judgment, and not under compulsion from the courts. The questions raised in the petition as to the procedure to be followed by the controller are advisory only, and likewise do not represent any actual or threatening controversy.

Although the petition recites that litigation is imminent, there is nothing in the petition to show how this conclusion is reached. The real question of law to be decided, namely, whether the city can now, when it is beyond its debt incurring capacity, issue and sell bonds of a loan authorized when the city was within such capacity, is in anticipation of a future event which may never

occur, due to the position taken by the mayor and city solicitor in respect thereto at the present time.

We therefore conclude that the question of jurisdiction in this case is ruled by the following excerpt from the opinion in Pittsburgh's Consolidated City Charter, 297 Pa. 502, 505, 507:

"Here we have a case commenced by a petition in which public officers, without averring any controverted matter for judicial settlement, ask advice on the law; this is supplemented by two intervening petitions, filed by parties who are not in a position to litigate between themselves the governing question sought to be raised, so as to have it made res judicata against those who may be charged with official responsibility in the premises, and neither of which petitions,—no matter what difference of view between the two intervenors they make may indicate,—avers or indicates any point of controversy between the intervening petitioners and the officials who filed the original petition. Such state of the record shows no controversy or 'ripening seeds' of such,—in other words, 'inevitable litigation,'—between parties alleged to be charged with responsibility and those wishing them to move, or desist from moving; nor do the petitions show or indicate that other established remedies are lacking to meet the real situation, all of which is essential to the relief sought in the present case. . . . Here the pleadings as a whole show no issues for adjudication; they contain nothing more than a prayer for advice in the law. . . .

"In Reese v. Adamson, 297 Pa. 13, 15-16, we . . . held . . . that where public officers are 'uncertain and insecure with respect to their legal status and duties', unless they show an actual controversy, or some such condition as just described, giving rise to this uncertainty, they are not entitled to relief by declaratory judgment . . . 'a real controversy must exist . . . and mere advisory opinions are not contemplated,' . . . in the absence of some showing of an actual controversy, no court

would have jurisdiction, either under the declaratory judgment or any other known form of procedure, to grant relief in this case". For these reasons, the petition for a declaratory judgment is dismissed.

There is also before the court a rule to show cause why the mayor and city solicitor should not be made parties to the record in this proceeding, said rule being granted upon petition by the city controller. An answer was filed questioning the jurisdiction of the court in the circumstances disclosed by the original petition. The better practice perhaps would have been to have filed a petition setting forth such facts as show a lack of jurisdiction, as provided by the Act of March 5, 1925, P. L. 23. However, we have examined the original petition with care and our conclusions in respect to it are above set forth. Having concluded that the court has no jurisdiction to entertain the petition for a declaratory judgment, it would follow that the court likewise has no jurisdiction to compel anyone to become a party thereto. The rule is therefore discharged.